products of the wife's farm were held to be hers. To make the most of the evidence in her behalf, arising from the rent of the bar-room and stable, it is a case of confusion of her rent with the fruits of the partnership business founded on the husband's capital, and his right to her labor and services. But the well settled rule is that a wife can establish her right to individual property against the husband's creditors, only by clear and satisfactory evidence that it was obtained by or through her own exclusive means.

## In the Supreme Court of Pennsylvania.
(*At Nisi Prius.*)

## JOHN RICE, Trustee, *v.* SOUTHERN PENNSYLVANIA IRON AND RAILROAD COMPANY.

1. A master cannot go behind the decree of foreclosure in distributing a fund raised by the sale. He must distribute it to the parties entitled under the decree.

2. Where there is no residue after the bondholders and lien creditors are satisfied, stockholders have no interests that need consideration.

3. The master should consider and settle the titles of adverse claimants to bonds.

4. A mortgage made to secure the payment of certain bonds is made for the benefit of the bondholders only, and no one can have an interest in the mortgage except as a bondholder.

5. Creditors cannot inquire into the good faith of a transaction by the company, unless it covers a fraud intended to affect them.

6. An auditor has no power to open or set aside a judgment. To him it is conclusive, and if creditors would attack it, they must resort to the proper court for that purpose.

7. Where bonds are pledged as collateral, the holders have a right to receive the full amount of the bonds, and not only the face of their claims with interest, unless subsequent creditors can show a resulting interest in their debtor. The holders must be left to account to their principal for any balance that may be over the amount due to themselves.

8. A bond of this character, though not a technically negotiable paper, is practically so for all purposes of commerce. They pass by delivery, and may be sued by the holder in his own name. The burden of proof, therefore, is upon the party who alleges that they were not received in the ordinary course of trade, and for a valuable consideration.

9. An act of an officer of a corporation, afterwards ratified by the board of directors, becomes, by such ratification, the authorized act of the corporation.

Exceptions to master's report distributing fund raised upon a sale of the property of the corporation defendant under the foreclosure of a second mortgage. The Southern Pennsylvania Iron and Railroad Company, having purchased certain bonds from Daniel V. Ahl, prior thereon, $50,000 in cash, and $50,000 in 1st mortgage bonds, and further agreed to give him 80 of 200 2d mortgage bonds for $1,000 each, to be thereafter made and executed.

After the 2d mortgage bonds were executed, 80 of them were respectively tendered to Ahl, and he persistently refused to accept them, because

two judgments for $33,000 each, which were prior liens, had been confessed by the company.

The 80 bonds refused by Ahl, together with other 2d mortgage bonds, were afterwards issued and delivered to Richmond L. Jones, as collateral security to protect him and others for money loaned to the company. Large amounts of the money so loaned were obtained by the individual endorsements of Jones and others, and the said bonds were put up as collateral by Jones with the parties from whom the money was borrowed. The face of the bonds, which was made good by the amount realized at the sale under the foreclosure of the mortgage, was in excess of the debts for which they had been pledged by Jones, though less than the indebtedness of the company to him.

These bonds were presented to the master for payment by the parties with whom Jones had pledged them as collateral, who claimed payment in full to them.

Daniel V. Ahl, although he had no bonds, claimed the right to receive the amount of the fund belonging to eighty of those bonds, notwithstanding his refusal to take them upon the ground that the company had covenanted to issue them to him under the agreement above referred to.

John Rice held a judgment against said company for $125,000, the lien of which was subsequent to the 2d mortgage.

Opinion delivered December 26, 1873, by

Gordon, J.    Adopting the principle developed in the case of McElrath *v.* The Pittsburgh and Steubenville R. R. Co., 18 Smith 37, that the master, in a case like the present, cannot go behind the decree of foreclosure to ascertain the *bona fides* of the parties to the mortgage, but is limited to a distribution of the fund raised by the sale, we cut off many of the exceptions to the master's report, and also much of the testimony as irrelevant.

Thus, it matters not in the present inquiry, that Jones' contract for the construction of the road should have been $400,000 instead of $600,-000, that the stock subscriptions were gotten on false representations, or that Mr. Ahl was to get too much or too little for his land ; or that through misrepresentation he was induced to exchange a good security for one that was worthless.    None of these things, nor the intention of the directors in executing this mortgage, can now be inquired into ; the day for this has gone by.    What remains for us to do is simply and only to distribute the fund among those to whom of right it belongs.    As there will be no residue after the bondholders and lien creditors are satisfied, it is clear that the stockholders have no interests that need consideration.

Undoubtedly the master should consider and settle the titles of adverse claimants to the bonds.    Hence we may first consider the exceptions of Daniel V. Ahl, who alleges that the master erred in not awarding to him the proceeds of some 80 of these bonds, or rather the sum of $80,000 produced by the sale under the mortgage.    If we understand the general idea contained in his exceptions, it is that the second mortgage was made chiefly for the purpose of securing to him the balance of the purchase money resulting from his sale of lands to the company, and that therefore he had a vested right in the mortgage from the date of its execution, that the tender of the bonds was only a recognition of his pre-existing right, and that his refusal to accept them, did not either extinguish or weaken that right.    But we hold this position to be untenable in this, that the mortgage was executed not to secure his purchase money, but to secure 200 bonds of $1,000 each.    How could the agreement of the company to give him 80 of these bonds create a specific lien in his favor in the mortgage itself?    Suppose the bonds had never been tendered to him, that the company in violation of their agreement had refused to deliver them to him, could he nevertheless have recovered his $80,000 through a *scire facias* on the mortgage?    We think not.    It does seem to us that in such case, the remedy must lie either in covenant upon the agreement, or in a bill to rescind that agreement and restore him to his rights under his former contract.    We are at a loss to discern, as alleged by his very eminent counsel, how his case is bettered by his steadfast and persistent refusal to accept of these bonds.    It looks to us that this was a fatal mistake that is now past remedy.    It is no doubt true that the company acted in bad faith, in permitting the judgments Nos. 203 and 204, August Term of the Common Pleas of Franklin county, to precede the execution of the mortgage, but neither does this help Ahl's status with reference to that mortgage.

It is then to us clear that the master was right in refusing to let him in upon this fund.

We turn next to the exceptions of John Rice.    He complains of the master's ruling in that he allowed the full face of the claims of Augustus F. Boas, and the Farmers' National Bank of Reading (the two judgments already referred to), because these claims were in part made up of usurious interest; in other words, that these judgments were purchased by the claimants at a usurious discount from one A. L. Boyer, a broker of Reading, to whom they had been executed by the company for the purpose of discount.    Now whether these were *bona fide* purchases from Boyer, or were taken with the knowledge that they were confessed to him without consideration, and for the mere purpose of sale, matters not.    Creditors cannot inquire into the good faith of the transaction, unless it covers a fraud intended to affect them.    On this the authorities cited by the master are

full and to the point. It is also settled that an auditor has no power to open or set aside a judgment. To him it is conclusive, and if creditors would attack it, they must resort to the proper court for that purpose.

. . The next exception by Mr. Rice, presents the complaint that the master should only have allowed to the Reading Saving Bank, Bushong & Bros., and the Kensington National Bank, the face of their claims with interest, and not the full amount of the bonds which they hold only as collateral security. No doubt this would be so, were these collaterals held directly from this iron and railroad company, or from Jones, as their agent. But as the master has found, and we think rightly from an examination of the testimony, that these bonds were issued to Jones for his own security, as well as that of others in raising money for the purposes of this company, and that he will not be paid by the bonds which he received and deposited with these parties, we cannot under such circumstances, regard the equity of subsequent creditors as superior to that of Jones, and must therefore leave these bondholders to account to their principal for any balance that may be over the amount due to themselves. With reference to the bonds held by the Allegheny National Bank, no such circumstances have appeared as would throw upon them the burden of proof of showing that they received them in the ordinary course of trade, and for a valuable consideration. These bonds are made payable to bearer, they pass by delivery, and may be sued by the holder in his own name, so that, though not technically negotiable paper, they are practically so for all purposes of commerce.

We cannot therefore, upon the mere motion of a disappointed creditor, compel the holder of such bonds to prove that they were obtained from the company for a valuable consideration.

Next come the three bonds held by Henry M. Keim. It is not denied that the company received full consideration for these in the way of his services as secretary. But it is alleged that the treasurer had no authority from the board of directors to issue them. We might answer this exception by directing attention to the fact, that the company has found no fault with that act, and it behooves not a stranger to call it in question ; nevertheless, whether the acts of the treasurer in this matter were authorized or not, at or before the time they were transacted, they were acquiesced in by the directors, and thus ratified. Kelsey v. Bank, 19 P. F. Smith 429.

We deem it unnecessary to dwell upon the remaining exceptions, as they are substantially disposed of in what has already been said. In conclusion we think the master has properly disposed of the fund in controversy. Report confirmed ; decree to be entered accordingly.

Hon. *F. Carroll Brewster* and *Samuel G. Thompson*, Esq., for John Rice, trustee ; *Charles Henry Jones* and *George W. Biddle*, Esqs., for

the Railroad and Richmond L. Jones; *George F. Baer*, Esq., for the Reading creditors; *Wm. McLellan, Wm. S. Stenger, David W. Sellers*, and *Jeremiah S. Black*, Esqs., for Daniel V. Ahl; *Alexander K. McClure* and *James Thompson*, Esqs., for John Rice, creditor; *Alexander D. Campbell*, Esq., for Kensington National Bank; *Charles Henry Jones*, Esq, for Alleghany National Bank.

---

*Twenty-third Judicial District.*